E-FILED
Wednesday, 05 February, 2020 03:08:26 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CALVIN WILLIAMS,<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Case No. 19-cv-1103<br>Criminal Case No. 13-cr-10122 |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("§ 2255 Motion") (D. 1) and Motion to Amend to Add Appendix Pursuant to Fed. R. Civ. P. 15(a) ("Motion to Amend") (D. 9[1]). For the reasons stated herein, Petitioner's Motions are DENIED. The Court declines to issue a certificate of appealability. This matter is now TERMINATED, and the Clerk of Court is directed to CLOSE the case.

## BACKGROUND & PROCEDURAL HISTORY

On December 17, 2013, a grand jury indicted Petitioner, Calvin Williams ("Williams"), of conspiring to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Cr. D. 5[2]). On April 7, 2014, the prosecution filed a notice of prior convictions under 21 U.S.C. § 851 stating that Williams had been convicted of two prior felony drug offenses in Cook County, Illinois. (Cr. D. 25). The charged drug weight and his two prior convictions exposed Williams to a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A).

---

[1] Citations to the docket in this case are abbreviated "D. _____."
[2] Citations to the underlying criminal case docket are abbreviated "Cr. D. _____."

Williams negotiated a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) in which he would plead guilty in exchange for a prison term of twenty years. (Cr. D. 35 at 2, 4). The agreement provided a factual basis, which stated: "The amount of methamphetamine the defendant conspired to distribute was more than five hundred (500) grams of a mixture and substance containing a detectable amount of methamphetamine." *Id.* at 12. The agreement also provided that "this count carries a minimum mandatory sentence of ten (10) years and a maximum sentence of life imprisonment … If the defendant has a prior felony drug conviction, this count carries a minimum mandatory sentence of twenty (20) years and a maximum sentence of life imprisonment." *Id.* at 3.

On May 19, 2015, Williams appeared for a change of plea hearing. (Cr. D. 35). He acknowledged that he received a copy of the indictment and had discussed the charges and possible defenses with his trial counsel. (Cr. D. 37 at 3-4). When the Court asked Williams if he was fully satisfied with his attorney, he answered, "not fully, no." *Id.* at 4. Judge Mihm then met with Williams and his counsel outside the prosecution's presence. Counsel informed the Court that he and Williams reviewed the discovery, which included statements from multiple witnesses involved in the conspiracy. *Id.* at 5-6. He also told the Court that the charge against Williams carried a mandatory life sentence due to his prior convictions. *Id.* at 6. Counsel explained that he negotiated a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), met with Williams many times, and gave him a copy of the agreement to review. *Id.* at 6-7. Williams stated he wanted counsel to file certain motions, such as a motion asking the Court to require the prosecution to provide a summary of its evidence proving the existence of a conspiracy to distribute methamphetamine. *Id.* at 9. Counsel acknowledged that the prosecution already obtained and provided statements from other members of the conspiracy. *Id.*

The Court then told Williams that it seemed his counsel had done his "usual, very professional job," but reminded Williams that it was entirely his decision to plead guilty or go to trial. *Id.* at 10. Williams then responded that he was ready to proceed with the plea. *Id.* Back in open court, Judge Mihm explained the terms of the agreement and proceeded through the factual basis underlying the plea. *Id.* at 29. Williams admitted that during the spring of 2011 and August 2013, he became involved in the drug conspiracy described in the indictment. *Id.* The Court asked, "[I]t says here that this conspiracy involved more than 500 grams. Is that an accurate statement?" *Id.* at 32. Williams responded that he was individually responsible for approximately 300 grams and said he did not know what amounts others involved in the conspiracy were responsible for. *Id.* at 32-36. The prosecution responded that it would agree to accept Williams' admission of 300-400 grams as opposed to 500 grams because he would still face a mandatory life sentence based on his prior felony convictions. *Id.* at 36-37. Judge Mihm then asked what the prosecution's proof would be if this case went to trial, and counsel responded:

> Your Honor, if this case would go to trial the Government would prove … [t]hat during the time period alleged in the indictment the Defendant conspired and agreed with others to distribute methamphetamine in Knox County within the Central District of Illinois and elsewhere; and in furtherance of that conspiracy the Defendant and others obtained the methamphetamine and sold the methamphetamine, possessed the methamphetamine. The Government will agree with the Defendant that the weight was less than 500, more than 50, so we're dealing with a (b)(1)(B) sentencing scheme. And that would be the nature of the evidence if the case were to go to trial.

*Id.* at 39. Williams agreed that this was an accurate statement, and the Court accepted his guilty plea as a knowing and voluntary plea. *Id.* at 39-42.

On October 30, 2015, the Court accepted the plea agreement and sentenced Williams to 240 months' imprisonment. Judgment was entered on November 3, 2015. (Cr. D. 40). On November 9, 2015, Williams appealed his conviction to the Seventh Circuit Court of Appeals. (Cr.

D. 44). He argued, *inter alia*, that his guilty plea was not knowing and voluntary because he was misadvised during the plea colloquy about his sentencing exposure. *United States v. Williams*, 719 Fed.Appx. 524, 525 (7th Cir. 2018). On January 5, 2018, the Seventh Circuit denied his appeal and affirmed the conviction. *Id.*

On March 25, 2019, Williams filed a § 2255 Motion arguing that his trial counsel was ineffective. (D. 1). On June 3, 2019, the Government filed its response. (D. 6). On July 24, 2019, Williams filed his traverse. (D. 8). On July 29, 2019, Williams filed a Motion to Amend to Add Appendix Pursuant to Fed. R. Civ. P. 15(a). (D. 9). This Order follows.

**LEGAL STANDARD**

A prisoner may move to vacate, set aside, or correct his sentence if he claims "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law[.]" 28 U.S.C. § 2255(a) (2008). "Section 2255 . . . is confined to correcting errors that vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993) (internal citation omitted), *abrogated on other grounds by Massaro v. United States*, 538 U.S. 500 (2003). When evaluating a § 2255 motion, the district court must "review the evidence and draw all reasonable inferences from it in the light most favorable to the government." *Messinger v. United States*, 872 F.2d 217, 219 (7th Cir. 1989).

Procedurally, unless a movant demonstrates changed circumstances in fact or law, he may not raise issues already decided or waived on direct appeal. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal." *Massaro*, 538 U.S. at 503-04. Likewise, a § 2255

4

motion cannot pursue non-constitutional issues that were not raised on direct appeal regardless of cause and prejudice. *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000). The only way such issues could be heard in the § 2255 context is if the alleged error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1979)).

## DISCUSSION

### I. Motion to Amend

In his Motion to Amend (D. 9), Williams asks to amend his traverse (D. 8) under Federal Rule of Civil Procedure 15(a) to add additional supporting documents. Appendix A includes the Seventh Circuit's written opinion in *United States v. Williams* dated November 1, 2016. (D. 9 at 2-6). Appendix B contains a letter Williams sent to his appellate counsel to inquire about obtaining a copy of a letter he sent to trial counsel about withdrawing his plea. *Id.* at 7-8.

The Civil Rule governing pleading amendments, Federal Rule of Civil Procedure 15, made applicable to habeas proceedings by 18 U.S.C. § 2242, Federal Rule of Civil Procedure 8(a)(2), and Habeas Corpus Rule 11, allows pleading amendments with "leave of court" any time during a proceeding. *See* Fed. R. Civ. P. 15(a). Before a responsive pleading is served, pleadings may be amended once as a "matter of course." *Id.* at (a)(1)(A).

The "original pleading" to which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas proceeding. *Mayle v. Felix*, 545 U.S. 644, 655 (2005). Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Habeas Corpus Rule 2(c) is more demanding. *Mayle*, 544 U.S. at 655. It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *Id.*

In his Motion to Amend, Williams asks the Court to allow him to amend "his response to the Government's motion in opposition of post conviction relief as a matter of course pursuant to Fed. R. Civ. P. 15(a) to add an appendix of parts of the recor[d] in which he intend[s] to rely." (D. 9 at 1). Williams seeks to amend his traverse under Federal Rule of Civil Procedure 15, but Rule 15 permits the amendment of a petition, not a traverse. Fed. R. Civ. P. 15; *Mayle*, 544 U.S. at 655. Additionally, Rule 15 allows an amendment to the petition once as a matter of course before a responsive pleading is filed. The Government filed its response to Williams' petition on June 3, 2019, and Williams waited until after the response was submitted to file a Motion to Amend. Additionally, Williams does not explain why he failed to include the Seventh Circuit's opinion from 2016 or the letter he sent to appellate counsel in 2017 with his petition, which was filed on March 25, 2019. (D. 1). Accordingly, his Motion to Amend is DENIED.

## II. Motion to Vacate, Set Aside, or Correct Sentence

In his § 2255 Motion, Williams argues his trial counsel was ineffective for (1) failure to investigate the prosecution's evidence, including recognizing meritorious defenses and trial strategies; (2) failure to investigate the evidence, leading to deficient performance during plea negotiation; (3) failure to advise him of the advantages and disadvantages of entering a plea of guilty to the altered factual basis; (4) failure to file a motion to withdraw plea agreement based on the altered factual basis; (5) failure to request a withdrawal of plea based on the altered drug amount; and (6) failure to object to the prosecution's "gamesmanship" during the change of plea hearing. (D. 1). The Government responds by asserting that Williams' trial counsel did not provide ineffective assistance of counsel on any of these claims. (D. 6).

### A. Ineffective Assistance of Counsel for Failing to Investigate Defenses or Evidence.

Williams first argues his trial counsel was ineffective for failing to investigate defenses or evidence. (D. 1 at 2). He claims the facts set forth at the change of plea colloquy were consistent with a meritorious buyer-seller relationship defense and contends there was no evidence of a conspiratorial agreement. *Id.* at 6. The Government argues that Williams' trial counsel did not fail to recognize any meritorious defense, nor was his performance deficient at the plea proceeding. (D. 6 at 17). In an affidavit submitted with the Government's response, trial counsel states that he investigated the case and considered potential defenses and strategies. (D. 6-1).

When examining counsel's conduct, the courts are "highly deferential" to counsel and presume that decisions constitute reasonable litigation strategy. *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005). For claims of ineffective assistance of counsel, Williams must show that counsel's performance was deficient and that the deficient performance resulted in prejudice. *Thomas v. Clements*, 789 F.3d 760, 765 (7th Cir. 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). To establish that counsel's performance was deficient, Williams must show the performance fell below an "objective standard of reasonableness." *Id.* To establish prejudice, Williams must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694.

"In the plea bargain context a defendant must establish that his counsel's performance was objectively unreasonable and that but for counsel's errors, he would not have pleaded guilty and instead gone to trial." *United States v. Martinez*, 169 F.3d 1049, 1052-53 (7th Cir. 1999). Under the first prong, a defendant must show that counsel failed to learn the facts of the case and make a good faith estimate of a likely sentence. *Id.* at 1053. To prove the second prong, a petitioner must

7

show that his counsel's deficiency was a "decisive factor in [his] decision to plead guilty." *Id.* (quoting *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996)).

Here, the Court finds that trial counsel was not ineffective for failing to assert a buyer-seller relationship defense. "[A] conspiracy may be distinguished from a non-conspiratorial buyer-seller relationship through other evidence, including sales on credit, an agreement to look for customers, [and] commission payments…" *United States v. Villasenor*, 664 F.3d 673, 680 (7th Cir. 2011). During this conspiracy, Williams delivered approximately thirty-six grams of methamphetamine to Galesburg one to three times a month and sold the drug out of a co-conspirator's house in exchange for two grams per trip. (Cr. D. 38, ¶ 10). The co-conspirator, co-defendant Timothy Nelson, and others sold meth for Williams. *Id.* at ¶¶ 11, 12, 17. Additionally, Williams would provide Nelson an amount of ICE methamphetamine, and Nelson would repay Williams after he sold the drugs. *Id.* at ¶ 17. Ultimately, this Court determined Williams was responsible for 936 grams of ICE methamphetamine. *Id.* at ¶ 19. Even if trial counsel had asserted such a defense, the argument would have been meritless because the conduct between the parties was indicative of a conspiracy. An attorney is not ineffective for failing to make a meritless argument. *See Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993). Therefore, Williams' first ground for ineffective assistance of counsel is DENIED.

Williams next argues that trial counsel's failure to investigate the evidence in this case caused counsel to perform deficiently during plea negotiations and proceedings. (D. 1 at 2). Williams contends he told counsel "that he did not believe that the conspiracy involved more than 500 grams or more of methamphetamine." *Id.* at 3. Williams claims that his counsel failed to investigate the defenses and continued to advise Williams if he proceeded to trial, he would either be found guilty of 500 grams and be sentenced to life or found innocent. *Id.* In his affidavit, trial

counsel states that he fully investigated the prosecution's case and considered potential defenses and strategies. (D. 6-1).

"[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Once a defendant pleads guilty, he cannot set aside his plea by showing that "if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973).

The Court finds that Williams' claim his trial counsel failed to investigate the drug weight lacks merit. An adversarial testing of the drug weight would have been through a trial, and the Seventh Circuit previously determined that Williams' waiver of the right to a trial through his plea of guilty was knowing and voluntary. *Williams*, 719 Fed.Appx. at 527. Williams also fails to show that his counsel's performance was deficient and that he faced prejudice as a result. Williams pleaded guilty to a lesser drug weight than alleged in the indictment. (Cr. D. 35). He was informed of the consequences of declining the plea agreement; he faced a mandatory life sentence if he was convicted as charged in the indictment. Therefore, Williams' second ground for ineffective assistance of counsel is also DENIED.

**B. Failing to Advise Williams of Consequences of Plea with Altered Factual Basis.**

The next issue before the Court is whether trial counsel was ineffective for allegedly failing to advise Williams of the consequences of a guilty plea to the altered factual basis during the change of plea hearing. Williams argues that if trial counsel had provided proper advice, he would not have pleaded guilty and would have proceeded to trial. (D. 1 at 10). The Government argues Williams' assertion is vague and without merit because the transcript is clear that the altered factual

9

basis had no bearing on the plea agreement or the evidence that would have been adduced at trial. (D. 6 at 20). In his affidavit, trial counsel states that the "[t]ranscripts reflect that modification of the drug amount to accommodate Petitioner's contradictory oral statement made during the change of plea hearing did not alter the agreed sentence." (D. 6-1 at 2). In addition, counsel states that Williams conceded guilt verbally and in writing on the record at the change of plea hearing and made a statement apologizing at the sentencing hearing. *Id.*

"In the plea bargaining context, reasonably competent counsel will 'attempt to learn all of the facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty.'" *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016) (quoting *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003)). A petitioner "must show that he was prejudiced by the deficiencies in his counsel's performance." *Id.* (internal citations omitted). "To show prejudice in the plea bargaining context, a defendant must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded and would have insisted on going to trial.'" *Id.* "In other words, a defendant must demonstrate a reasonable probability that 'the outcome of the plea process would have been different with competent advice.'" *Id.* (quoting *Lafler v. Cooper*, 566 U.S. 156, 163 (2012)).

The record shows that Williams was advised and understood that the rejection of a plea agreement meant he could face mandatory life in prison if found guilty at trial. Additionally, the Seventh Circuit recognized that Williams acknowledged that during the Rule 11 colloquy he was correctly told that he would face a mandatory life sentence if he rejected the plea agreement and was convicted. *Williams*, 719 Fed.Appx. at 526. The Court finds that even if trial counsel had explained in more detail the consequences of the plea agreement, Williams would be no better off than he is now. Williams had the choice to accept the plea agreement or face mandatory life if

found guilty at trial due to his prior felony convictions. Accordingly, Williams fails to show that his trial counsel's allegedly deficient performance caused him any prejudice. As a result, this ground for ineffective assistance of counsel is DENIED.

### C. Failing to File a Motion to Withdraw Plea.

Williams next argues his trial counsel was ineffective for failing to make a motion to withdraw the plea agreement based on the altered factual basis and altered drug amount listed in the agreement. (D. at 2-3). Williams contends that at the sentencing hearing, trial counsel advocated for acceptance of the plea despite Williams' request that the plea be withdrawn. *Id.* at 3. The Government argues that even if trial counsel had filed a motion to withdraw his plea, it likely would have been denied. (D. 6 at 22). Under Federal Rules of Criminal Procedure 11(d)(2)(B), a defendant may withdraw a guilty plea on a showing of "any fair and just reason." One such reason is if the plea was involuntary. *United States v. Alvarez-Quiroga*, 901 F.2d 1433, 1436 (7th Cir. 1990). "Nonetheless, a defendant does not have an absolute right to withdraw a guilty plea, and the decision whether to allow a plea withdrawal is within the sound discretion of the district court." *Id.*

Upon review of the Rule 11 colloquy during his change of plea hearing on May 19, 2015, the Court finds Williams would have faced an uphill battle in demonstrating a fair and just reason for withdrawing his plea. (Cr. D. 37). The transcript demonstrates that his plea was voluntary and he understood the effect of rejecting the plea agreement. During his change of plea hearing, Williams responded affirmatively to the following questions:

> Have you fully discussed those charges and the case in general, including any possible defenses that you might have, with Mr. Bryning as your attorney?
>
> Did you have a reasonable opportunity to read this agreement and discuss it with your attorney before you signed it?

11

Does the plea agreement represent in its entirety every understanding that you have with the Government?

Do you understand the terms of the plea agreement?

*Id.* at 12-13. The Court then explained the terms of the agreement and asked Williams if he understood. Williams responded affirmatively. *Id.* at 13-15.

The Court asked Williams if he was satisfied with his counsel's representation. When Williams said he was not fully satisfied, the Court held an in camera discussion. *Id.* at 4-5.

| | |
|---|---|
| THE COURT: | Now, as he mentioned, ultimately it's entirely your decision as to whether or not you wish to plead guilty. |
| MR. WILLIAMS: | Yes, sir. |
| THE COURT: | If you choose not to plead guilty, then [trial counsel] will aggressively represent you at trial. … I haven't heard anything to suggest to me that he has not met his responsibilities to you. |
| MR. WILLIAMS: | Yes. |
| THE COURT: | That he has not professionally prepared your defenses, prepared your options for you. |
| MR. WILLIAMS: | Yes, he has.<br>… |
| THE COURT: | Okay. So do you want to talk to [trial counsel] alone for a few minutes before you decide what you want to do? |
| MR. WILLIAMS: | No. My decision is, is clear. |
| THE COURT: | Pardon? |
| MR. WILLIAMS: | My decision is clear. I'm ready to move forward. |

*Id.* at 10-11.

Although Williams may have wished for a better deal, the Court finds that the record shows trial counsel diligently negotiated a fair plea agreement. The Court is hard-pressed to find any

evidence of substandard performance. Trial counsel demonstrated his professionalism and competence by advising Williams about the sentence he would face if found guilty at trial – going to trial with two prior felony convictions meant Williams would face mandatory life in prison if found guilty. Williams fails to demonstrate that a motion to withdraw plea would have been granted, nor does he show that he suffered prejudice as a result of his trial counsel's decision not to file a motion to withdraw the plea. Therefore, Williams' Motion on this basis is DENIED.

### D. Failing to Object to Prosecutorial "Gamesmanship."

In his final argument, Williams claims his trial counsel was ineffective for failing to object to the prosecution's "gamesmanship" during his change of plea hearing and that he "conceded guilt[] without consultation." (D. 1 at 3). Williams argues that if trial counsel had consulted him about the altered factual basis, Williams would have negotiated a more favorable sentence or proceeded to trial. *Id.* at 24. The Government argues Williams has failed to make the requisite showing to establish ineffective assistance of counsel. (D. 6 at 24).

In order for a petitioner to make a showing that there was a reasonable probability that he would not have pleaded guilty absent his attorney's deficient conduct, he must do more than simply allege that he would have insisted on going to trial. *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010). "[H]e must also come forward with objective evidence that he would not have pled guilty." *Id.* (quoting *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005)). "Objective evidence includes the nature of the misinformation provided by the attorney to the petitioner and the history of plea negotiations." *Hutchings*, 618 F.3d at 697.

Here, the Court finds Williams has fails to present objective evidence that his trial counsel provided him with misinformation. Trial counsel states in his affidavit that he negotiated the lowest sentence the prosecution would accept, which spared Williams a mandatory life sentence if he was

found guilty at trial. (D. 6-1 at 1). The record shows that Williams understood going to trial was entirely his decision. (Cr. D. 37 at 10). Additionally, the Court gave Williams the opportunity to speak privately with his attorney at the change of plea hearing, but Williams declined and stated he was ready to move forward with entering his plea. *Id.* at 11. Williams fails to offer more than vague and unsupported assertions that he would have proceeded to trial but for his attorney's allegedly ineffective assistance. Therefore, Williams' final claim is also DENIED.

### E. Whether Williams is Entitled to an Evidentiary Hearing.

"[A petitioner] is entitled to an evidentiary hearing on his claim of ineffective assistance of counsel if he has alleged 'facts that, if proven, would entitle him to relief.'" *Gaylord*, 829 F.3d at 506 (quoting *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001)). "[S]uch a hearing is not required if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' *Id.* (quoting § 2255) (internal quotation marks omitted). Nor is a hearing required if the petitioner makes allegations that are 'vague, conclusory, or palpably incredible,' rather than 'detailed and specific.'" *Id.* (citation and internal quotation marks omitted).

Here, Williams is not entitled to an evidentiary hearing on his claims of ineffective assistance of counsel. A hearing would not produce any additional evidence justifying relief. *See United States v. Taglia*, 922 F.2d 413, 419 (7th Cir. 1991) (evidentiary hearings are not required in § 2255 cases where there is no reason to suppose that a hearing would produce evidence justifying relief). Additionally, Williams fails to plead any facts which would justify a hearing because the allegations he makes are vague and conclusory. *See Daniels v. United States*, 54 F.3d 290, 293 (7th Cir. 1995) (a hearing is not necessary if the petitioner makes conclusory or speculative allegations rather than specific factual allegations). Accordingly, Williams has failed to demonstrate that he is entitled to an evidentiary hearing, and the request is DENIED.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing § 2255 Proceedings directs district courts to either issue or deny a certificate of appealability when entering a final order adverse to the applicant. To obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "[A petitioner] need not show he is likely to prevail, but he must show that 'reasonable jurists would debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quoting *Slack*, 529 U.S. at 484).

Williams fails to make this required showing. Therefore, any request for a certificate of appealability is DENIED.

## CONCLUSION

Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [1] and Motion to Amend to Add Appendix Pursuant to Fed. R. Civ. P. 15(a) [9] are DENIED. The Court declines to issue a certificate of appealability. This matter is now TERMINATED, and the Clerk of Court is directed to CLOSE the case.

ENTERED this 5th day of February, 2020.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge